IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF DELAWARE

| | |
|---|---|
| KOREA LINE CORPORATION,<br>a foreign corporation<br>      Plaintiff.<br>v.<br>GLORY WEALTH SHIPPING PTE. LTD<br>a foreign corporation<br>      Defendant. | Civil Action |

## VERIFIED COMPLAINT

Plaintiff Korea Line Corporation ("Plaintiff" or "KLC"), a foreign corporation, by and through its undersigned attorneys, files this Complaint against Defendant Glory Wealth Shipping Pte. Ltd. ("Defendant" or "Glory Wealth") and alleges, upon information and belief, as follows:

## JURISDICTION AND VENUE

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves claims for the breaches of maritime contracts of charter party. This case thus falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333. The case also falls under the Court's federal question jurisdiction pursuant to 28 U.S.C. §1331 in that the action arises under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, codified at 9 U.S.C. §201 *et seq.* and/or the Federal Arbitration Act, 9 U.S.C. §1 *et seq.*

2. Plaintiff brings this action pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Rule B"), seeking an order and writ of attachment for, *inter alia*, one garnishee bank in this Honorable District wherein monies of Defendant are presently located, specifically $3,303,815.61 in a maritime holdover account located at HSBC Bank U.S.A., N.A., in New Castle, Delaware, in which funds Defendant Glory

Wealth has an attachable property interest by virtue of a May 21, 2010, order of the U.S. District Court for the Southern District of New York in Civil Action No. 10-cv-1384 (BSJ). A copy of the order is attached hereto as Exhibit A.

3. This proceeding is brought solely in an effort to obtain security in connection with ongoing London arbitration proceedings between Plaintiff and Defendant in connection with four maritime contracts of charter party.

**THE PARTIES**

4. At all times relevant hereto, Plaintiff KLC was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an office and principal place of business at KLC Bldg. #145-9, Samseong-dong, Gangnam-Gu, Seoul, Republic of Korea, 135-878.

5. At all times relevant hereto, Defendant Glory Wealth is and was a business entity organized and existing under the laws of Singapore with an office and principal place of business at 9 Temasek Boulevard 07-00, Suntec City Tower 2, Singapore 038989.

6. As outlined more fully below, Plaintiff, in the capacity as vessel owner, and Defendant, as charterer, entered into several different contracts of charter party which form the basis for the underlying claims described herein and for which claims security is sought in connection with ongoing London arbitration proceedings.

**BACKGROUND FACTS**

**M/V WREN**

7. On or about February 22, 2008, Plaintiff, in the capacity as vessel owner, entered into a maritime contract of time charter party, on a NYPE charter party form, for the M/V WREN with Defendant Glory Wealth for a minimum period of 36 months, maximum 38 months.

8. The vessel was duly delivered to Glory Wealth and the charter commenced on June 21, 2008.

9. The applicable rate of hire for the continuation charter period was $39,800, which, after deduction for commission, resulted in a net daily hire rate of $37,810.

10. KLC as owner duly performed the charter party at all times.

11. In breach of its charter party obligations, Defendant Glory Wealth wrongfully terminated the charter and redelivered the vessel to KLC prior to the minimum contractual period, which was June 21, 2011.

12. KLC has sought and obtained substitute employment for the vessel, but the hire/freight earned on the substitute employment is substantially less than the agreed rate under the charter party.

13. Accordingly, by virtue of Glory Wealth's non-performance/breach of the WREN charter party, KLC has suffered damages including (1) the difference in hire/freight earned under the substitute voyages in comparison to the hire that was to be earned under the subject charter with Defendant and (2) the difference in hire/freight that is likely to be earned on future substitute voyages in consideration of the market rates in comparison to the hire that was to be earned under the subject charter, for a total damage claim of $22,934,079.13 (which takes into account any deductions for Glory Wealth's account).[1]

14. Despite due demand, the total amount of $22,934,079.13 remains due and owing

---

[1] KLC and Glory Wealth have agreed that no security will be sought in relation to the WREN claim until an arbitration award is published, which is expected shortly. KLC therefore does not currently seek security for the claim on the WREN, but hereby gives notice that it intends to supplement its application for security on the WREN claim once the award is published.

by Glory Wealth in relation to the charter of the M/V WREN.[2]

**M/V F.D. CRIS DE ANGELIS**

15.  On or about January 10, 2007, Plaintiff, in the capacity as vessel owner, entered into a maritime contract of time charter party, on a NYPE charter party form, for the M/V F.D. CRIS DE ANGELIS with Glory Wealth Shipping Service Ltd. BVI ("Glory Wealth BVI"), for a minimum period of 23 months/about 25 months.

16.  The vessel was duly delivered to Glory Wealth BVI and the charter commenced on March 9, 2007.

17.  The applicable rate of hire for the charter period under the January 10, 2007, charter was $28,000 daily, which, after deduction for commission, resulted in a net daily hire rate of $26,250.

18.  By tripartite agreement between and among KLC, Defendant Glory Wealth and Glory Wealth BVI, dated on or about September 7, 2007, Glory Wealth BVI transferred its rights and responsibilities under said charter to Defendant Glory Wealth; Defendant Glory Wealth confirmed its liability as charterer under the said charter in respect of the performance of the charter after the transfer; and Defendant Glory Wealth, along with Glory Wealth BVI, guaranteed to KLC full performance of the charter both before and after the transfer.

19.  On or about May 21, 2008, KLC, in the capacity as vessel owner, and Defendant Glory Wealth, as charterer, entered into a maritime contract of charter party, on a NYPE form, for a "direct continuation" of the charter of the M/V F.D. CRIS DE ANGELIS for a minimum 36 months to maximum 38 months.

---

[2] Due to the confidential commercial information contained in KLC's invoice showing the comparisons between the freight/hire earned on the substitute voyages in comparison to the hire to be earned under the subject charter, KLC is not attaching that documentation hereto, but will make the documentation available for the Court's *in camera* review should the Court so desire.

20.     The applicable rate of hire for the continuation charter period was $50,000 daily, which, after deduction for commission, resulted in a net daily hire rate of $46,875.

21.     KLC as owner duly performed the charter party at all times.

22.     In breach of its charter party obligations, Defendant Glory Wealth wrongfully terminated the charter and redelivered the vessel to KLC prior to the minimum contractual period, which was April 18, 2012.

23.     KLC has sought and obtained substitute employment for the vessel, but the hire/freight earned on the substitute employment is substantially less than the agreed rate under the charter party.

24.     Accordingly, by virtue of Glory Wealth's non-performance/breach of the charter party, KLC has suffered damages including (1) the difference in hire/freight earned under the substitute voyages in comparison to the hire that was to be earned under the subject charters with Defendant and (2) the difference in hire/freight that is likely to be earned on future substitute voyages in consideration of the market rates in comparison to the hire that was to be earned under the subject charters, for a total damage claim of $27,620,475.41 (which takes into account any deductions for Glory Wealth's account).

25.     Despite due demand, the total amount of $27,620,475.41 remains due and owing by Glory Wealth in relation to the charter of the M/V F.D. CRIS DE ANGELIS.[3]

**M/V ORIENT PHOENIX**

26.     On or about January 26, 2007, Plaintiff, in the capacity as vessel owner, entered into a maritime contract of time charter party, on a NYPE charter party form, for the M/V ORIENT PHOENIX with Glory Wealth BVI, for a period of 35 months to about 37 months.

---

[3] *See* footnote 2 *supra*.

27. The vessel was duly delivered to Glory Wealth BVI and the charter commenced on August 2, 2007.

28. The applicable rate of hire for the charter period under the ORIENT PHOENIX charter was $23,750.

29. By tripartite agreement between and among KLC, Defendant Glory Wealth and Glory Wealth BVI, dated on or about August 29, 2007, Glory Wealth BVI transferred its rights and responsibilities under said charter to Defendant Glory Wealth; Defendant Glory Wealth confirmed its liability as charterer under the said charter in respect of the performance of the charter after the transfer; and Defendant Glory Wealth, along with Glory Wealth BVI, guaranteed to KLC full performance of the charter both before and after the transfer.

30. KLC as owner duly performed the charter party at all times.

31. In breach of its charter party obligations, Defendant Glory Wealth wrongfully terminated the charter and redelivered the vessel to KLC prior to the minimum contractual period.

32. KLC has sought and obtained substitute employment for the vessel, but the hire/freight earned on the substitute employment is substantially less than the agreed rate under the charter party.

33. Accordingly, by virtue of Glory Wealth's non-performance/breach of the charter party, KLC has suffered damages including (1) the difference in hire/freight earned under the substitute voyages in comparison to the hire that was to be earned under the subject charter with Defendant and (2) the difference in hire/freight that is likely to be earned on future substitute voyages in consideration of the market rates in comparison to the hire that was to be earned under the subject charters, for a total of $1,886,075.88.

34. In addition, and in further breach of the contract, $30,964.98 in unpaid hire remains due and owing to Plaintiff.

35. Despite due demand, the total damage amount of $1,917,040.86 remains due and owing by Glory Wealth in relation to the charter of the M/V ORIENT PHOENIX.[4]

**M/V ANNA ELISABETH**

36. On or about March 20, 2007, Plaintiff, in the capacity as vessel owner, entered into a maritime contract of time charter party, on a NYPE charter party form, for the M/V ANNA ELISABETH with Glory Wealth BVI, for a period of about 35/37 months.

37. By tripartite agreement between and among KLC, Defendant Glory Wealth and Glory Wealth BVI, dated on or about October 29, 2007, Glory Wealth BVI transferred its rights and responsibilities under said charter to Defendant Glory Wealth; Defendant Glory Wealth confirmed its liability as charterer under the said charter in respect of the performance of the charter after the transfer; and Defendant Glory Wealth, along with Glory Wealth BVI, guaranteed to KLC full performance of the charter both before and after the transfer.

38. The vessel was duly delivered to Glory Wealth and the charter commenced on January 10, 2008.

39. The applicable rate of hire for the charter period under the ANNA ELISABETH charter was $25,500.

40. KLC as owner duly performed the charter party at all times.

41. In breach of its charter party obligations, Defendant Glory Wealth wrongfully terminated the charter and redelivered the vessel to KLC prior to the minimum contractual period.

---

[4] See footnote 2 *supra*.

42. KLC has sought and obtained substitute employment for the vessel, but the hire/freight earned on the substitute employment is substantially less than the agreed rate under the charter party.

43. Accordingly, by virtue of Glory Wealth's non-performance/breach of the charter party, KLC has suffered damages including (1) the difference in hire/freight earned under the substitute voyages in comparison to the hire that was to be earned under the subject charter with Defendant and (2) the difference in hire/freight that is likely to be earned on future substitute voyages in consideration of the market rates in comparison to the hire that was to be earned under the subject charter, for a total damage claim of $5,751,574.15.

44. In addition, and in further breach of the contract, $106,528.59 in unpaid hire remains due and owing to Plaintiff.

45. Despite due demand, the amount of $5,858,102.74 remains due and owing by Glory Wealth in relation to the charter of the M/V ANNA ELISABETH.[5]

**SUMMARY OF PRINCIPAL CLAIM AMOUNTS**

46. Based on the foregoing, KLC's claims for damages against Glory Wealth in relation to the four charter parties (before considering interest and costs) described herein consist of the following:

| | |
|---|---|
| M/V WREN | $22,934,079.13 |
| M/V F.D. CRIS DE ANGELIS | $27,620,475.41 |
| M/V ORIENT PHOENIX | $1,917,040.86 |
| M/V ANNA ELISABETH | $5,858,102.74 |
| TOTAL: | $58,329,698.14 |

---

[5] See footnote 2 *supra*.

## DEMAND FOR SECURITY

47. The charter parties provide for the application of English law, and any disputes under the charter parties are to be referred to London arbitration. Plaintiff specifically reserves its rights to arbitrate the substantive matters in dispute.

48. Plaintiff has commenced arbitration proceedings on all underlying charter party claims, and those proceedings are ongoing in London.

49. This action is thus brought to obtain security in favor of Plaintiff in aid of London arbitration and in respect to Plaintiff's claims against Defendant Glory Wealth as outlined above.

50. Because Plaintiff and Defendant have agreed that security will not be sought in regards to the M/V WREN until the arbitration award is published, Plaintiff seeks security for the time being only in relation to the remaining three charter party claims which total $35,395,619.01.

51. This action is further brought to obtain security for the additional sums which are recoverable, including: Plaintiff's anticipated attorneys' fees; arbitrators' fees and costs in the London arbitrations; and interest, all of which are recoverable in London arbitration as part of Plaintiff's claims pursuant to English law, including but not limited to Section 63 of the English Arbitration Act of 1996.

52. Plaintiff estimates, as nearly as can be computed, that the legal expenses and costs of prosecuting the claims against Defendant will be at least $300,000, and interest on its damages is estimated to be $3,539,561.90 (calculated at the rate of 5% for a period of 2 years, the estimated time for completion of the proceedings in London).[6]

---

[6] Plaintiff conservatively estimates the time to completion as at least two (2) years. With respect to the interest calculation, Plaintiff has calculated interest herein using the simple method for calculating interest. Plaintiff specifically reserves its right to seek interest in the underlying actions using the compound method for calculating interest.

53. The total amount for which Plaintiff seeks security for its claims herein (with the exception of the WREN as explained above and rounded down) is $39,235,180.91.

**APPLICATION FOR ISSUANCE OF A RULE B ATTACHMENT**

54. As previously noted, KLC seeks to attach Defendant Glory Wealth's property interest in funds located in a specific bank account at HSBC Bank USA, N.A. in this District. Specifically, in connection with *Glory Wealth v. Worldlink* filed in the U.S. District Court for the Southern District of New York, Civil Action No. 10-cv-1384 (BSJ), Defendant Glory Wealth has obtained an attachable property interest in $3,303,815.61 held by HSBC Bank in what is known as a "maritime holdover" account physically located in New Castle, Delaware. (A copy of the order is attached hereto as Exhibit A.)

55. Glory Wealth is not found within the District of Delaware for Rule B purposes, but does now have funds within the jurisdiction in the said account at HSBC Bank USA, N.A.

56. Plaintiff seeks issuance of an order from the Court directing the Clerk of the Court to issue a process of maritime attachment and garnishment pursuant to Rule B and also pursuant to the Federal Arbitration Action, attaching the assets of Glory Wealth located in the specific account at HSBC Bank USA, N.A., for the purpose of obtaining *quasi in rem* jurisdiction over Glory Wealth and to secure KLC's claims as described herein.

WHEREFORE, Plaintiff prays:

a. That a summons with process of attachment and garnishment may issue against Defendant Glory Wealth Shipping Pte. Ltd. in the amount of $39,235,180.91 (inclusive of estimated interest), and since Glory Wealth cannot be found, that its assets, debts, effects, monies, funds, credits, tangible and intangible property interests within the district at HSBC Bank USA, N.A. may be attached in an amount sufficient to answer

KLC's claims;

b. That Defendant and any other person claiming an interest therein may be cited to appear and answer the matters aforesaid;

c. That this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary, including but not limited to the recognition and enforcement of any awards or judgments entered against Defendant, as may be necessary;

d. For such other, further and different relief, including attorneys' fees, interest, costs and disbursements, as this Court may deem just and proper, and/or a default with respect to any property seized in the event a timely response is not filed.

Lee C. Goldstein Esq.

By: *(signature)*
Lee C. Goldstein, Esquire
615 W. 18th St., P.O. Box 1957
Wilmington, DE 19802
302-654-2632
LGolds3790@aol.com
Attorney ID No. 231

OF COUNSEL:
MATTIONI, LTD.

By: *(signature)*
Stephen L. Galati, Esquire
399 Market Street, Second Floor
Philadelphia, PA 19106
(215) 629-1600
E-Mail: sgalati@mattioni.com
Attorney for Plaintiff

## VERIFICATION BY WAY OF UNSWORN DECLARATION

I am a member of the law firm of Mattioni, Ltd. counsel for the Plaintiff, in this matter. I make this certification pursuant to and in compliance with Supplemental Rule B. Plaintiff is a business entities and there are no authorized officers of the Plaintiff readily available to make this verification; I am authorized to make this verification on behalf of Plaintiff; the facts set forth in the foregoing Complaint are true and correct to the best of my knowledge, except as to matters therein stated upon information and belief, and as to these matters, I believe them to be true; the sources of my information and the grounds of my belief are documents in the possession of my firm and reports made to me by officers, employees, representatives and agents of Plaintiff.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: June 3, 2010

_____
Stephen J. Galati

# EXHIBIT "A"

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/2/10
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GLORY WEALTH SHIPPING PTE LTD.,

        Plaintiff,

- against -

WORLDLINK SHIPPING LIMITED,

        Defendant.

---

10 CV 1384 (BSJ)
ECF CASE

~~PROPOSED~~ ORDER DIRECTING ISSUANCE OF WRIT OF EXECUTION AND TURNOVER OF PROPERTY

**WHEREAS** on April 30, 2010, this Court entered an order recognizing and confirming an arbitral award in the amount of $18,030,612.28 rendered in London, England in favor of Glory Wealth Shipping Pte Ltd. ("Glory Wealth") against Worldlink Shipping Limited ("Worldlink"), and entered a judgment in the amount of $18,030,612.28 and no part of Glory Wealth's judgment against Worldlink has been satisfied; and

**WHEREAS** on May 13, 2010, this Court directed Glory Wealth to submit a motion for a writ of execution by May 17, 2010, and Glory Wealth submitted a motion for a writ of execution on May 14, 2010; and

**WHEREAS** Worldlink is subject to the unlimited jurisdiction of New York's courts and is authorized by the New York Secretary of State to do business in New York; and

**WHEREAS** Worldlink possesses assignable, intangible and/or contingent property located in New York and abroad interests upon which Glory Wealth presently seeks to execute its judgment.

**IT IS HEREBY ORDERED THAT** without prejudice to Glory Wealth's rights to move for an additional writ of execution upon its discovery of Worldlink's additional property interests:

1

1. The clerk of the court shall issue a writ of execution against judgment debtor Worldlink Shipping Limited, commanding the United States Marshal to serve said writ of execution upon the registered agent of Worldlink Shipping Limited in New York.

2. Worldlink Shipping Limited must immediately pay the judgment amount of $18,030,612.28, to Glory Wealth.

3. Worldlink Shipping shall immediately cause tangible or intangible assets or property located outside this jurisdiction to be brought into this jurisdiction in an amount sufficient to satisfy Glory Wealth's judgment.

**IT IS FURTHER ORDERED THAT** the following property interests of Worldlink are to be immediately turned over to the possession and benefit of Glory Wealth, entitling Glory Wealth to all rights and privileges attendant to ownership of such intangible property and rights:

1. Worldlink's intangible, future and/or contingent property interest in funds in the amount of $3,303,815.61, presently under attachment at HSBC USA N.A. in the District of Delaware pursuant to an order issued by Chief Judge Sleet in *Glory Wealth Shipping Pte Ltd. v. Worldlink Shipping Limited*, No. 10-cv-44 (D.Del.) and all of Worldlink's related and associated rights in such litigation;

2. Worldlink's assignable defenses in the matter of *Flame S.A. v. Worldlink Shipping, Ltd.*, 08-cv-9998 (S.D.N.Y.) (GBD), particularly as these defenses relate to Worldlink's interest in the $3,303,815.61 presently under attachment at HSBC USA N.A. in the District of Delaware.

3. Worldlink's assignable claims and litigation rights with against the following entities:

    A. United Profit International (M) SDN BHD

    B. Parkroad (Singapore) Pte Ltd.

C. Rizzo Bottiglieri, De Carlini Armatori SpA

D. Sinotrans Germany (GmbH)

E. Moussalli Holdings

F. BCM a/k/a BCM-Manno a/k/a BCM SA a/k/a BCM SA Manno and Bulk Trading S.A.

**SO ORDERED:**

*[signature]*

BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

May 21, 2010

# 9470644_v1